IN THE COURT OF APPEALS OF NORTH CAROLINA

 2022-NCCOA-161

 No. COA21-15

 Filed 15 March 2022

 Cumberland County, No. 19 CVS 3596

 ESTATE OF GREGORY GRAHAM, Plaintiff,

 v.

 ASHTON LAMBERT, individual and official capacity, FAYETTEVILLE POLICE
 DEPARTMENT and CITY OF FAYETTEVILLE, Defendants.

 Appeal by defendants from order entered 16 July 2020 by Judge Mary Ann

 Tally in Cumberland County Superior Court. Heard in the Court of Appeals 21

 September 2021.

 Kevin Vidunas for plaintiff-appellee.

 Steven A. Bader for defendants-appellants.

 GORE, Judge.

¶1 We review an order from the trial court that denied the motion for summary

 judgment filed by defendants Officer Ashton Lambert and the City of Fayetteville

 (collectively defendants). Therefore, the following recitation of facts presents the

 evidence in the light most favorable to plaintiff. See Peter v. Vullo, 234 N.C. App. 150,

 153, 758 S.E.2d 431, 434 (2014).

¶2 On 24 July 2018, Officer Lambert was on-duty as a police officer with the City

 of Fayetteville Police Department. At approximately 11:53 p.m., Officer Lambert was
 EST. OF GRAHAM V. LAMBERT

 2022-NCCOA-161

 Opinion of the Court

 dispatched to a domestic violence incident involving a firearm. In responding to the

 call, Officer Lambert traveled westbound in the middle straight lane along Raeford

 Road in a marked police cruiser. Officer Lambert traveled at a speed of 58 miles per

 hour, the speed limit on Raeford Road is 45 miles per hour. Officer Lambert did not

 activate his emergency siren or blue lights.

¶3 At approximately the same time on 24 July 2018, Gregory Graham walked

 across Raeford Road, between the intersections of Raeford Road and Sandalwood

 Drive and Eucalyptus Road in Fayetteville, North Carolina. Mr. Graham crossed

 three eastbound lanes, stopped on the median, looked to ensure traffic was clear, and

 then proceeded to cross the westbound lanes of Raeford Road. Mr. Graham crossed at

 a portion of road that did not have a pedestrian crosswalk, but was well lit.

¶4 While Mr. Graham was crossing Raeford Road he was struck and killed by

 Officer Lambert’s police cruiser. At the point of impact Officer Lambert had slowed

 his vehicle to 53 miles per hour. Footage from Officer Lambert’s body camera shows

 that while he was traveling down Raeford Road, Officer Lambert looked at and

 touched his laptop computer. Additionally, twice, in the moments before impact,

 Officer Lambert’s vehicle slightly deviated from the lane it was traveling in. At the

 time of the accident, traffic was light, but there were a few other cars on the road.

 Raeford Road is straight and flat with no curves and the weather was clear with no

 rain the night of the accident. Additionally, at the time of the accident Mr. Graham’s
 EST. OF GRAHAM V. LAMBERT

 2022-NCCOA-161

 Opinion of the Court

 blood alcohol content was 0.31.

¶5 On 13 June 2019, the Estate of Mr. Graham (“plaintiff”) filed a complaint

 against Officer Lambert, in his individual and official capacity, the City of

 Fayetteville, and the Fayetteville Police Department. Plaintiff alleged claims of

 negligence, gross negligence, and wrongful death. On 19 August 2020, defendants

 filed an answer to plaintiff’s complaint. In their answer, defendants moved to dismiss

 the claims against defendant Fayetteville Police Department as an improper party,

 moved to dismiss plaintiff’s complaint pursuant to Rule 12(b)(6) of the North Carolina

 Rules of Civil Procedure, and asserted defenses of sovereign and governmental

 immunity, and public official immunity. Defendants also asserted that plaintiff’s

 claims are barred by contributory negligence and gross contributory negligence. On

 11 September 2019, plaintiff responded to defendants’ answer.

¶6 Defendants filed a motion for summary judgment on 6 March 2020. Defendants

 reasserted that the claims against the Fayetteville Police Department should be

 dismissed as an improper party. Defendants also asserted that the claims against the

 City of Fayetteville and Officer Lambert, in his official capacity, are barred by

 governmental immunity and that the claims against Officer Lambert, in his

 individual capacity, are barred by public official immunity. Defendants also argued

 they are entitled to summary judgment because there is no evidence Officer Lambert

 acted in a grossly negligent manner, plaintiff’s claims are barred by plaintiff’s own
 EST. OF GRAHAM V. LAMBERT

 2022-NCCOA-161

 Opinion of the Court

 contributory negligence, plaintiff’s claims are barred by the doctrine of sudden

 emergency, and that punitive damages are not available against a municipality or

 officers in their official capacity.

¶7 Defendants’ motion for summary judgment was heard in Cumberland County

 Superior Court on 13 July 2020. The trial court concluded that the Fayetteville Police

 Department is not a proper party to the action and, thus, granted summary judgment

 in favor of defendant Fayetteville Police Department. However, the trial court

 concluded there are genuine issues of material fact as to the claims against

 defendants Officer Lambert and the City of Fayetteville and denied their motions for

 summary judgment. Defendants Officer Lambert and the City of Fayetteville gave

 written notice of appeal on 7 August 2020.

¶8 On appeal, defendants argue the City of Fayetteville has not waived

 governmental immunity, Officer Lambert is entitled to public official immunity,

 plaintiff did not present evidence of gross negligence, and plaintiff’s contributory

 negligence bars his suit. We conclude that plaintiff has failed to present evidence of

 gross negligence and that defendants Officer Lambert and the City of Fayetteville are

 entitled to summary judgment.

 I. Standard of Review

¶9 “Our standard of review of an appeal from summary judgment is de novo; such

 judgment is appropriate only when the record shows that ‘there is no genuine issue
 EST. OF GRAHAM V. LAMBERT

 2022-NCCOA-161

 Opinion of the Court

 as to any material fact and that any party is entitled to a judgment as a matter of

 law.” In re Will of Jones, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (quoting Forbis

 v. Neal, 361 N.C. 519, 523-24, 649 S.E.2d 382, 385 (2007)).

 II. Discussion

 A. Interlocutory Appeal

¶ 10 Defendants acknowledge that this appeal is interlocutory. However,

 defendants assert that the order denying their motion for summary judgment affected

 a substantial right and is immediately appealable. Typically, the denial of a motion

 for summary judgment is not immediately appealable, as it is interlocutory. See

 Sharpe v. Worland, 351 N.C. 159, 161-62, 522 S.E.2d 577, 579 (1999). However, denial

 of a motion for summary judgment on the grounds of governmental immunity is

 immediately appealable. Epps v. Duke Univ., 122 N.C. App. 198, 201, 468 S.E.2d 846,

 849, rev. denied, 344 N.C. 436, 476 S.E.2d 115 (1996). Additionally, in the interest of

 judicial economy we will consider the entirety of defendants’ appeal. See Block v.

 Cnty. of Person, 141 N.C. App. 273, 277, 540 S.E.2d 415, 419 (2000); Houpe v. City of

 Statesville, 128 N.C. App. 334, 340, 497 S.E.2d 82, 87 (1998).

 B. Governmental Immunity

¶ 11 Defendants first argue that the City of Fayetteville has not waived its

 governmental immunity. “[A] municipality may waive its immunity from tort liability

 for governmental activities by purchasing liability insurance.” Anderson v. Town of
 EST. OF GRAHAM V. LAMBERT

 2022-NCCOA-161

 Opinion of the Court

 Andrews, 127 N.C. App. 599, 602, 492 S.E.2d 385, 387 (1997); N.C. Gen. Stat. § 160A-

 485(a) (2020). To state a claim against the municipality a plaintiff must allege “waiver

 of immunity by the purchase of insurance.” Id. (citing Morrison-Tiffin v. Hampton,

 117 N.C. App. 494, 504, 451 S.E.2d 650, 657, appeal dismissed and disc. review

 denied, 339 N.C. 739, 454 S.E.2d 654 (1995)). Defendants argue that plaintiff’s

 complaint failed to allege waiver of immunity, thus immunity was not waived.

¶ 12 The plaintiff does not need to explicitly state the word “waiver” to allege a

 waiver of immunity by purchase of insurance. See id. at 603, 492 S.E.2d at 387. Under

 the requirements of notice pleading the complaint need only give notice to the

 defendants so that they understand a waiver of immunity has been alleged. Id.

¶ 13 Here, the complaint does not specifically mention waiver of immunity or

 explicitly mention the applicable insurance policy. However, the complaint does state

 multiple times that the action is “brought against the Defendant City pursuant to

 N.C.G.S. § 160A-485” and that “Defendant City shall be held liable pursuant to . . .

 N.C.G.S. § 160A-485.” Section 160A-485 is the statute that gives a municipality the

 ability to purchase liability insurance and states that if the municipality does

 purchase liability insurance governmental immunity is waived. N.C. Gen. Stat. §

 160A-485. We hold that the complaint is sufficient to give notice to defendants that

 plaintiff is alleging a waiver of immunity because it states the action is brought and
 EST. OF GRAHAM V. LAMBERT

 2022-NCCOA-161

 Opinion of the Court

 that defendants are liable pursuant to § 160A-485. Therefore, governmental

 immunity was waived.

 C. Public Official Immunity

¶ 14 Defendants next argue that Officer Lambert has public official immunity for

 the claims brought against him in his individual capacity. “As long as a public officer

 lawfully exercises the judgment and discretion with which he is invested by virtue of

 his office, keeps within the scope of his official authority, and acts without malice or

 corruption, he is protected from liability.” Smith v. State, 289 N.C. 303, 331, 222

 S.E.2d 412, 430 (1976) (citations omitted). Public official immunity “serves to protect

 officials from individual liability for mere negligence, but not for malicious or corrupt

 conduct, in the performance of their official duties.” Thompson v. Town of Dallas, 142

 N.C. App. 651, 655, 543 S.E.2d 901, 904-05 (2001) (citation omitted) (emphasis in

 original).

¶ 15 The capacity in which a defendant is sued dictates what immunity may be

 available to them. See Est. of Long v. Fowler, 2021-NCSC-81, ¶ 13. A suit against a

 defendant in their official capacity is subject to the doctrine of sovereign immunity,

 while a suit against a defendant in their individual capacity is not subject to the

 doctrine of sovereign immunity. Id. However, a suit against a defendant in their

 individual capacity may be subject to the doctrine of public official immunity if she
 EST. OF GRAHAM V. LAMBERT

 2022-NCCOA-161

 Opinion of the Court

 acts within the scope of her office and acts without malice or corruption. Smith, 289

 N.C. at 331, 222 S.E.2d at 430.

¶ 16 “It is a simple matter for attorneys to clarify the capacity in which a defendant

 is being sued. Pleadings should indicate in the caption the capacity in which a

 plaintiff intends to hold a defendant liable.” Fowler, at ¶ 14 (quoting Mullis v.

 Sechrest, 347 N.C. 548, 554, 495 S.E.2d 721, 724 (1998)). Here, the caption of the

 complaint lists Officer Lambert in both his individual and official capacity. The

 doctrine of governmental immunity is applicable to Officer Lambert in his official

 capacity and, we acknowledge that public official immunity applies to law

 enforcement officers acting within the scope of their duties. See Thompson, 142 N.C.

 App. at 655, 543 S.E.2d at 904-05.

¶ 17 In the case sub judice, Officer Lambert was responding to an incident within

 the scope of his official duties at the time of the accident and his conduct was neither

 malicious nor corrupt. Further, plaintiff concedes that Officer Lambert is entitled to

 public official immunity. Thus, we hold public official immunity applies and the trial

 court erred by not granting summary judgment for the claims brought against Officer

 Lambert in his individual capacity.

 D. Gross Negligence
 EST. OF GRAHAM V. LAMBERT

 2022-NCCOA-161

 Opinion of the Court

¶ 18 Defendants next argue that plaintiff did not present evidence of gross

 negligence. Plaintiff argues that Officer Lambert was grossly negligent in the

 operation of his police cruiser.

¶ 19 Section 20-145 exempts police officers from speed laws when engaged in the

 apprehension of a law violator. N.C. Gen. Stat. § 20-145. This Court has concluded

 that the applicability of § 20-145 and the factors considered in its analysis are not

 only applicable to the pursuit of a law violator, but are also applicable when an officer

 is “emergency response driving” to the scene of an incident. Truhan v. Walston, 235

 N.C. App. 406, 413, 762 S.E.2d 338, 343 (2014), review denied by, 368 N.C. 272, 772

 S.E.2d 863 (2015). Here, Officer Lambert was responding to a domestic violence

 incident involving a firearm, thus § 20-145 is applicable.

¶ 20 However, the exemption in § 20-145 “does not apply to protect the officer from

 the consequence of a reckless disregard of the safety of others.” Norris v. Zambito,

 135 N.C. App. 288, 293, 520 S.E.2d 113, 117 (1999) (quotations omitted). Our

 Supreme Court has held that an officer’s liability in a civil action for injuries resulting

 from the officer’s vehicular pursuit of a law violator is to be determined pursuant to

 a gross negligence standard of care. Parish v. Hill, 350 N.C. 231, 238, 513 S.E.2d 547,

 551, reh’g denied, 350 N.C. 600, 537 S.E.2d 215 (1999). “[G]ross negligence has been

 defined as wanton conduct done with conscious or reckless disregard for the rights

 and safety of others . . . an act is wanton when it is done of wicked purpose, or when
 EST. OF GRAHAM V. LAMBERT

 2022-NCCOA-161

 Opinion of the Court

 done needlessly, manifesting a reckless indifference to the rights of others.” Id. at

 239, 513 S.E.2d at 551-52 (internal quotations and citations omitted). “Whether an

 officer’s behavior during pursuit amounted to gross negligence is an issue of law to be

 determined from the evidence.” Greene v. City of Greenville, 225 N.C. App. 24, 26, 736

 S.E.2d 833, 835, review denied, 367 N.C. 214, 747 S.E.2d 249 (2013). “Although issues

 of negligence are generally not appropriately decided by way of summary judgment,

 if there are no genuine issues of material fact, and an essential element of a

 negligence claim cannot be established, summary judgment is proper.” Norris, 135

 N.C. App. at 293, 250 S.E.2d at 116. “North Carolina’s standard of gross negligence,

 with regard to police pursuits, is very high and rarely met.” Eckard v. Smith, 166

 N.C. App. 312, 323, 603 S.E.2d 134, 142 (2004), aff’d, 360 N.C. 51, 619 S.E.2d 503

 (2005).

¶ 21 “When determining whether an officer’s actions constitute gross negligence, we

 consider: (1) the reason for the pursuit, (2) the probability of injury to the public due

 to the officer’s decision to begin and maintain pursuit, and (3) the officer’s conduct

 during the pursuit.” Greene, 225 N.C. App. at 27, 736 S.E.2d at 836 (citation omitted).

¶ 22 “Relevant considerations under the first prong include whether the officer was

 attempting to apprehend someone suspected of violating the law and whether the

 suspect could be apprehended by means other than high speed chase.” Id. (cleaned

 up). Here, Officer Lambert was responding to a domestic violence incident involving
 EST. OF GRAHAM V. LAMBERT

 2022-NCCOA-161

 Opinion of the Court

 a firearm. Thus, Officer Lambert’s reason for driving at a speed above the speed limit

 was valid and lawful.

¶ 23 “When assessing prong two, we look to the (1) time and location of the pursuit,

 (2) the population of the area, (3) the terrain for the chase, (4) traffic conditions, (5)

 the speed limit, (6) weather conditions, and (7) the length and duration of the

 pursuit.” Id. (citation omitted). Here, the accident occurred just before midnight on a

 seven-lane road surrounded by commercial buildings. Officer Lambert was driving on

 a flat, straightaway portion of Raeford Road on a night where the weather was clear.

 Officer Lambert’s vehicle slightly deviated from its lane of traffic twice, but there is

 no evidence that he lost control of the vehicle. Video footage shows there were at least

 five other vehicles on the road at the time of the accident. The speed limit on Raeford

 Road is 45 miles per hour, and Officer Lambert was traveling at a speed of 58 miles

 per hour. Finally, the record shows that less than two minutes passed from the time

 Officer Lambert was dispatched to the time of the accident. Therefore, we conclude

 that these facts are insufficient to establish gross negligence under prong two.

¶ 24 The third prong analyzes the officer’s conduct. Id. “Relevant factors include (1)

 whether an officer made use of the lights or siren, (2) whether the pursuit resulted in

 a collision, (3) whether an officer maintained control of the cruiser, (4) whether an

 officer followed department policies for pursuits, and (5) the speed of the pursuit.” Id.

 at 27-28, 736 S.E.2d at 836 (citation omitted). Courts have discussed facts where an
 EST. OF GRAHAM V. LAMBERT

 2022-NCCOA-161

 Opinion of the Court

 officer failed to use emergency lights, sirens, and headlights, Young v. Woodall, 343

 N.C. 459, 463, 471 S.E.2d 357, 360 (1996); Fowler v. N.C. Dep’t of Crime Control &

 Pub. Safety, 92 N.C. App. 733, 736, 376 S.E.2d 11, 13, disc. rev. denied, 324 N.C. 577,

 381 S.E.2d 773 (1989), violated generally accepted standards regarding high speed

 driving and police chases, Clark v. Burke Cnty, 117 N.C. App. 85, 91, 450 S.E.2d 747,

 750 (1994), and whether the officer was speeding during the pursuit, Fowler, 92 N.C.

 App. at 736, 376 S.E.2d at 13. In these cases, our Courts have concluded that the

 officers’ conduct at most amounted to negligent discretionary acts but did not rise to

 the level of gross negligence.

¶ 25 In the present case, Officer Lambert did not utilize his lights or sirens, his

 pursuit resulted in the accident involving Mr. Graham, and Officer Lambert was

 traveling 13 miles per hour above the speed limit. Plaintiff presents arguments on

 appeal that Fayetteville Police Department policy required Officer Lambert to utilize

 his lights and sirens when responding to a scene. Plaintiff also argues that Officer

 Lambert lost control of his vehicle, however the evidence shows his vehicle only

 slightly deviated from its lane of travel. Additionally, Officer Lambert did look at his

 laptop and touch the laptop’s trackpad while he was driving on Raeford Road. These

 facts track closely to those in the above cited cases and demonstrates that Officer

 Lambert’s conduct did not rise to the level of gross negligence. See Young, 343 N.C.

 at 463, 471 S.E.2d at 360; Fowler, 92 N.C. App. at 736, 376 S.E.2d at 13; Clark, 117
 EST. OF GRAHAM V. LAMBERT

 2022-NCCOA-161

 Opinion of the Court

 N.C. App. at 91, 450 S.E.2d at 750. We conclude that Officer Lambert’s actions were

 acts of discretion on his part which may have been negligent but were not grossly

 negligent.

¶ 26 Contrasting the facts in the case sub judice to those in Truhan further

 demonstrates that Officer Lambert’s conduct did not rise to the level of gross

 negligence. In Truhan, the officer was responding to the scene of a minor car accident

 involving no injuries, to act as traffic control. Truhan, 235 N.C. App. at 413, 762

 S.E.2d at 343. The officer began his high-speed response at approximately 7:19 a.m.,

 and drove along a road where a school, a fire station, and multiple residential

 driveways and side streets are located. Id. at 414-15, 762 S.E.2d at 344. The area was

 not densely populated, but there was a mix of residential, commercial, and

 governmental buildings along the highway. Id. at 415, 762 S.E.2d at 344. The officer

 was driving along a mostly flat road with some turns and curves. Id. There was no

 evidence of heavy traffic, but there were several automobiles in the area. Id. The

 officer in Truhan was traveling at speeds in excess of 100 miles per hour in a 45 miles

 per hour zone. Id. In Truhan, the officer also failed to activate his lights and sirens

 when they should have been utilized. Id. at 416, 762 S.E.2d at 344. The Court in

 Truhan concluded these facts did present a genuine issue of material fact as to gross

 negligence and affirmed the trial court’s grant of summary judgment. Id. at 421, 762

 S.E.2d at 347.
 EST. OF GRAHAM V. LAMBERT

 2022-NCCOA-161

 Opinion of the Court

¶ 27 We believe the facts in Truhan are more egregious than those in the present

 matter. For example, the officer in Truhan was traveling at speeds more than double

 the speed limit and in excess of 100 miles per hour while Officer Lambert’s speed only

 exceeded the speed limit by 13 miles per hour. Further, the officer in Truhan was

 traveling on a road with turns and curves in a densely populated area at a time of

 day when there were numerous other vehicles on the road. In contrast, Officer

 Lambert was traveling on a multi-lane straightaway road, at night when traffic on

 that road was sparse. We do not believe the facts in the present case rise to the level

 of those in Truhan which created a genuine issue of material fact as to gross

 negligence.

 III. Conclusion

¶ 28 Our holding on the gross negligence issue is dispositive, thus we decline to

 consider defendants’ contributory negligence argument. We hold there is no genuine

 issue of material fact as to whether Officer Lambert was grossly negligent, thus

 defendants are entitled to judgment as a matter of law and we reverse the trial court’s

 order denying summary judgment.

 REVERSED.

 Judge TYSON concurs.

 Judge JACKSON concurs in part and dissents in part
 No. COA21-15 – Graham v. Lambert

 JACKSON, Judge, concurring in part and dissenting in part.

¶ 29 I join the majority opinion except for the portion holding that the trial court

 erred in denying Defendants’ motion for summary judgment on the basis that there

 was no genuine issue of material fact whether Officer Lambert was grossly negligent

 when he struck Mr. Graham with his police cruiser. In my view, the record evidence

 presents a genuine question of whether Officer Lambert was grossly negligent as he

 used his computer while speeding down Raeford Road in the middle of the night on

 24 July 2018 before striking and killing Mr. Graham. The majority in essence holds

 that Officer Lambert’s conduct cannot constitute gross negligence as a matter of law.

 Because I would hold that there is a genuine issue of material fact regarding whether

 Officer Lambert was grossly negligent, I respectfully dissent.

 I. Governing Law

¶ 30 “[I]ssues of negligence are generally not appropriately decided by way of

 summary judgment[.]” Norris v. Zambito, 135 N.C. App. 288, 293, 520 S.E.2d 113,

 116 (1999). Summary judgment is only proper if

 there is no genuine issue as to any material fact, and the
 movant is entitled to judgment as a matter of law. In order
 to prevail on a summary judgment motion, the moving
 party must show either (1) an essential element of
 plaintiff’s claim is nonexistent; (2) plaintiff cannot produce
 evidence to support an essential element of his claim, or (3)
 plaintiff cannot surmount an affirmative defense which
 would bar the claim. The trial court must construe all
 evidence in the light most favorable to the non-moving
 party, allowing the non-moving party to be given all
 favorable inferences as to the facts.
 GRAHAM V. LAMBERT

 2022-NCCOA-161

 JACKSON, J., concurring in part and dissenting in part

 Gibson v. Mutual Life Ins. Co. of New York, 121 N.C. App. 284, 286, 465 S.E.2d 56,

 58 (1996) (internal marks and citations omitted).

¶ 31 On appeal,

 [w]e review a trial court order granting or denying a
 summary judgment motion on a de novo basis, with our
 examination of the trial court’s order focused on
 determining whether there is a genuine issue of material
 fact and whether either party is entitled to judgment as a
 matter of law. As part of that process, we view the evidence
 in the light most favorable to the nonmoving party.

 Beeson v. Palombo, 220 N.C. App. 274, 277, 727 S.E.2d 343, 346-47 (2012) (internal

 marks and citation omitted).

¶ 32 While N.C. Gen. Stat. § 20-145 “exempts police officers from speed laws when

 engaged in the pursuit of a law violator[,] [t]he exemption . . . does not apply to protect

 the officer from ‘the consequence of a reckless disregard of the safety of others.’”

 Norris, 135 N.C. App. at 293, 520 S.E.2d at 117 (quoting N.C. Gen. Stat. § 20-145).

 “Our Supreme Court has construed the statute as establishing a general standard of

 care, as opposed to a simple exemption from speed laws, and has held that an officer’s

 liability in a civil action for injuries resulting from the officer’s vehicular pursuit of a

 law violator is to be determined pursuant to a gross negligence standard of care.” Id.

 (citing Parish v. Hill, 350 N.C. 231, 513 S.E.2d 547 (1999)). “‘Gross negligence’ occurs

 when an officer consciously or recklessly disregards an unreasonably high probability
 GRAHAM V. LAMBERT

 2022-NCCOA-161

 JACKSON, J., concurring in part and dissenting in part

 of injury to the public despite the absence of significant countervailing law

 enforcement benefits.” Eckard v. Smith, 166 N.C. App. 312, 319, 603 S.E.2d 134, 139

 (2004). “Gross negligence is something less than willful and wanton conduct.” Smith

 v. Step, 257 N.C. 422, 425, 125 S.E.2d 903, 905 (1962) (internal marks omitted).

 II. Application

¶ 33 A person’s use of a computer or handheld electronic device while operating an

 automobile presents unique risks to public safety. Our General Assembly recognized

 as much by enacting N.C. Gen. Stat. § 20-136.1, which prohibits private citizens from

 “driving any motor vehicle . . . while viewing any television, computer, or video player

 which is located in the motor vehicle at any point forward of the back of the driver’s

 seat, and which is visible to the driver while operating the motor vehicle.” N.C. Gen.

 Stat. § 20-136.1 (2019). Section 20-136.1 does not apply “to law enforcement or

 emergency personnel while in the performance of their official duties[.]” Id. However,

 it is a legislative recognition of the simple fact that driving and watching a screen at

 the same time is dangerous.

¶ 34 Viewing the evidence in the light most favorable to Mr. Graham’s estate, as we

 must on review of the trial court’s denial of Defendants’ motion for summary

 judgment, Beeson, 220 N.C. App. at 277, 727 S.E.2d at 346-47, I would hold that the

 evidence presents a genuine issue of material fact regarding whether Officer Lambert

 was grossly negligent when he struck and killed Mr. Graham. On his first night on
 GRAHAM V. LAMBERT

 2022-NCCOA-161

 JACKSON, J., concurring in part and dissenting in part

 patrol by himself while working for the Fayetteville Police Department or any other

 law enforcement agency, Officer Lambert was one of three officers dispatched to a

 domestic disturbance call on 24 July 2018. It was Officer Lambert’s first night shift,

 and his first day working alone. He had joined the Fayetteville Police Department

 the previous October. Both of the other officers responding to the call were closer to

 where it originated, and Officer Lambert and the other officer responding were

 backup. In an interview, Officer Lambert later recalled that the status of the

 domestic disturbance at the time of the collision was that the disturbance was

 ongoing, and that because he was the farthest away of the three responding officers,

 he made a standard traffic response. Officer Lambert also admitted at his deposition

 that the situation was not an emergency. Officer Lambert never activated his blue

 lights or siren.

¶ 35 Upon initially responding to the call, Officer Lambert used his laptop computer

 in the front seat of his cruiser to locate the address to which he had been dispatched.

 He originally stated that he used the computer’s touchscreen; however, after

 reviewing footage from his body-worn camera, he later admitted that he used the

 computer’s track pad. This body-worn camera footage reflects that Officer Lambert

 found the address with the computer’s track pad 15 seconds before he struck and

 killed Mr. Graham. Officer Lambert was driving with one hand on the steering wheel

 and the other on his laptop for 18 of the 23 seconds before he collided with Mr.
 GRAHAM V. LAMBERT

 2022-NCCOA-161

 JACKSON, J., concurring in part and dissenting in part

 Graham, and periodically glanced at his computer screen during this timeframe. The

 body-worn camera footage and the dashcam footage from Officer Lambert’s cruiser

 provides evidence of at least two lane violations by Officer Lambert in the moments

 leading up to the accident. In each, Officer Lambert passes right on the outside line

 of his lane or over it, and these lane violations appear to coincide with Officer Lambert

 looking at his computer. Five seconds before colliding with Mr. Graham, Officer

 Lambert places his second hand on the steering wheel. Three seconds before the

 collision, Officer Lambert leans distinctively towards his computer.

¶ 36 From Officer Lambert’s body camera footage in the seconds following the

 accident, it appears Mr. Graham was killed instantly by the impact.

¶ 37 The collision occurred next to a car dealership, and security footage from the

 dealership highlights just how well-lit the area was even at such a late hour.

 Enormous floodlights illuminated a large parking lot at the dealership and nearby

 area, in addition to the lights along the road itself. The dealership security footage

 shows Mr. Graham crossing the road while using a cane. Mr. Graham was not

 stumbling as he crossed the road, and he successfully crossed five lanes of traffic

 before he was hit by Officer Lambert. The dealership footage also shows that Mr.

 Graham stopped at the median and looked both ways before crossing the side of the

 road where he was hit by Officer Lambert. From the dealership footage, as well as

 video footage from Officer Lambert’s cruiser and his body camera, Officer Lambert
 GRAHAM V. LAMBERT

 2022-NCCOA-161

 JACKSON, J., concurring in part and dissenting in part

 does not appear to brake at all before hitting Mr. Graham. There also were no skid

 marks on the road after the accident. From the video footage, Officer Lambert does

 not appear to attempt to avoid hitting Mr. Graham, although he states, in the body

 camera footage, after hitting Mr. Graham, that he jerked left to try to avoid hitting

 him—even though he struck Mr. Graham as Mr. Graham was crossing the road in

 front of him from Officer Lambert’s left to his right. In the body-worn camera footage,

 after the collision, Officer Lambert can also be heard to say, “I looked over, and . . . .”

 But then the audio cuts out, and in a subsequent interview, Officer Lambert stated

 that he could not recall what his next words were after “and.” Officer Lambert

 consistently stated that he was going 50 miles an hour at the time of the collision, but

 his cruiser’s black box showed that he was going 58 at one point and was traveling

 about 53 when he struck Mr. Graham.

¶ 38 As the majority notes, Officer Lambert was speeding, his blue lights and siren

 were not activated (in violation of Department policy), and the location of his collision

 with Mr. Graham was well-lit despite the late hour. While no one fact is conclusive,

 viewing the evidence before the trial court in its totality and in the light most

 favorable to Mr. Graham’s estate, as we must, the evidence before the trial court

 presented a genuine issue of material fact regarding whether Officer Lambert was

 grossly negligent. While I cannot say that the evidence shows that Officer Lambert

 was grossly negligent, it certainly shows that a jury could conclude that he was. I
 GRAHAM V. LAMBERT

 2022-NCCOA-161

 JACKSON, J., concurring in part and dissenting in part

 conclude that this evidence, if believed by a jury, tended to show a “high probability

 of injury to the public despite the absence of significant countervailing law

 enforcement benefits[,]” and thus raises a genuine issue of material fact on the

 question of gross negligence. Jones v. City of Durham, 168 N.C. App. 433, 444, 608

 S.E.2d 387, 394 (2005) (Levinson, J., concurring in part and dissenting in part),

 reversed for the reasons stated in the dissent, 361 N.C. 144, 638 S.E.2d 202 (2006).

 Moreover, it is difficult, if not impossible, to square the majority’s holding that Officer

 Lambert’s conduct could not have been grossly negligent with the video footage before

 the trial court when ruling on Defendants’ motion for summary judgment. I believe

 Mr. Graham’s estate is entitled to present this footage to a jury and for it to determine

 whether Officer Lambert was grossly negligent on 24 July 2018—a task to which we

 are ill-suited as an appellate court.

¶ 39 The majority distinguishes this case from our decision in Truhan v. Walston,

 235 N.C. App. 406, 762 S.E.2d 338 (2014), in support of its holding that Officer

 Lambert could not have been grossly negligent as a matter of law. In my view,

 however, Truhan is not relevantly distinct from this case in any respect. Like the

 present case, Truhan concerned an officer-involved collision, but in Truhan, the

 officer brought an action against a motorist he struck while responding to a call and

 the motorist then counter-claimed against the officer, alleging that the officer’s

 negligence was the cause of her and the officer’s injuries, not her own. Id. at 410, 762
 GRAHAM V. LAMBERT

 2022-NCCOA-161

 JACKSON, J., concurring in part and dissenting in part

 S.E.2d at 342. On cross motions for summary judgment filed by the officer and his

 insurer and the defendant and her husband and their insurer, the trial court granted

 summary judgment in favor of the officer and his insurer. Id. at 410-11, 762 S.E.2d

 at 342.

¶ 40 While true that the officer in Truhan was driving considerably faster than

 Officer Lambert, unlike in Truhan, in this case, viewing the evidence in the light most

 favorable to Mr. Graham’s estate, the evidence shows that (1) the accident occurred

 on Officer Lambert’s first night shift, and first day working alone; (2) Officer Lambert

 did not have his blue lights activated at the time of the accident; (3) Officer Lambert

 was using his computer to find an address in the moments leading up to the collision;

 (4) Officer Lambert committed two lane violations because he was looking at his

 computer instead of the road ahead of him in the moments before the crash; (5) Officer

 Lambert leaned distinctively towards his computer three seconds before the accident;

 and (6) Officer Lambert collided with Mr. Graham without attempting to avoid Mr.

 Graham by turning or applying the cruiser’s brakes to slow his vehicle down. Because

 I would hold that the evidence before the trial court presented a genuine issue of

 material fact regarding Officer Lambert’s gross negligence, as in Truhan and Jones,

 I respectfully dissent.